IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDAS INTERNATIONAL CORPORATION,<br><br>                Plaintiff,<br><br>v.<br><br>KIMBA CORP.,<br><br>                Defendant. | Case No. 1:10-cv-6112 |

**COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF**

Plaintiff, Midas International Corporation ("Midas"), by its attorneys, for its Complaint for Preliminary and Permanent Injunctive Relief, Damages and Other Relief ("Complaint") against Defendant, Kimba Corp. ("Kimba"), states as follows:

**Nature of the Action**

1. This is an action for trademark infringement under the trademark laws of the United States, for unfair competition, and for breach of contract. Midas seeks, among other things, a preliminary and permanent injunction (i) enjoining Kimba's wrongful and unlawful use of Midas' federally registered trademarks, trade name, indicia and other intellectual property, and (ii) enforcing the post-termination obligations set forth in the franchise agreements entered into by and between Kimba and Midas, including, without limitation, Kimba's post-termination obligation to cease using and to transfer and assign to Midas the telephone numbers used in connection with the operation of its former franchised Midas shops. Midas also seeks damages for Kimba's infringing and other wrongful conduct, and the attorneys' fees and costs it has incurred and will incur in prosecuting this action, as provided by statute and the parties' franchise agreements.

EAST\43552744.2

**Parties**

2. Midas is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Itasca, Illinois. Midas and its affiliates are engaged in the business of operating, and granting franchises to qualified persons to operate, automotive specialty shops (known as "Midas Shops") which engage in the sale and installation of certain automotive products and the performance of certain related services. Midas is the owner of, among other things, the trade name "Midas."

3. Kimba is a corporation organized and existing under the laws of the State of California, with its principal place of business in California. Kimba is a former Midas franchisee, which formerly operated franchised Midas Shops at 14301 Crenshaw Boulevard, Hawthorne, California, 24005 Hawthorne Boulevard, Torrance, California, and at 3125 Pacific Coast Highway, Hermosa Beach, California. Kimba currently operates an automotive service shop under the name "Auto House" at one of those locations (at 24005 Hawthorne Boulevard in Torrance, California).

**Jurisdiction and Venue**

4. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and under the common law.

5. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

6. Venue is proper in this Court under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

**The Midas System**

7. Based upon years of experience, Midas has developed and operates, and is the sole and exclusive owner of, a stringent system (the "Midas System"). The Midas System is a comprehensive system for the development, operation and maintenance of Midas Shops which is designed to ensure that Midas Shops and the services and products offered therein meet uniform, high quality standards. The Midas System is also designed to protect Midas' name and reputation. As such, all Midas franchise contracts require franchisees to comply with the Midas System in the operation of their Midas Shops.

8. The Midas System is widely known and favorably recognized by consumers. Consumers choose Midas because of Midas' high reputation for, *inter alia,* quality, service, products, and warranties. To protect the Midas System and the goodwill associated with the Midas System, Midas requires its franchisees to adhere to Midas' policies and procedures.

9. The Midas System includes proprietary rights in certain valuable trade names, service marks and trademarks including, *inter alia,* the trade names "Midas" and "The Midas Touch" (the "Proprietary Marks"). The Proprietary Marks include, but are not limited to, the following:

| MARK | REG. NO. | ISSUED |
|---|---|---|
| MIDAS | 655,353 | 12/03/1957 |
| MIDAS | 657,036 | 01/14/1958 |
| MIDAS BRAKE SHOPS | 753,876 | 07/30/1963 |
| OVAL & ARROW | 798,254 | 10/26/1965 |
| MIDAS MUFFLER SHOPS | 803,611 | 02/08/1966 |
| MIDAS | 803,614 | 02/08/1966 |
| OVAL & ARROW | 864,049 | 01/21/1969 |

| MARK | REG. NO. | ISSUED |
|---|---|---|
| MIDAS | 1,238,734 | 05/17/1983 |
| MIDAS LOGO (COLOR) | 2,611,406 | 08/27/2002 |
| MIDAS LOGO | 2,465,462 | 07/03/2001 |
| MIDAS (STYLIZED) | 2,465,463 | 07/03/2001 |
| THE MIDAS TOUCH | 1,258,822 | 11/22/1983 |

10. The Proprietary Marks serve to identify the source, origin and sponsorship of Midas Shops and the products and services they offer, and to distinguish those shops, products and services from those established, made, offered and sold by others.

11. The Proprietary Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registrations of the Proprietary Marks, and all other registrations for trademarks or service marks which are part of the Midas System, have been in full force and effect since their registration and continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. Each registration set forth above is prima facie evidence of the validity of the registration of the Proprietary Marks, of Midas' ownership of those marks, and of Midas' exclusive right to use those marks in commerce on the services and goods listed above, as provided in 15 U.S.C. § 1057(b) and § 1115(a).

12. Midas has given notice to the public of the registration of the Proprietary Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that Midas remains the exclusive users of the Proprietary Marks.

13. Midas or its predecessors have continuously used the Proprietary Marks in interstate commerce in connection with the promotion, operation and franchising of Midas Shops and the promotion and sale of the products and services they offer throughout the United States, including the State of California.

14. Midas has the exclusive right to use and license the Proprietary Marks and derivations thereof, as well as the distinctive Midas System with which franchisees offer Midas products and services to the public under the Proprietary Marks. Pursuant to written franchise agreements entered into by and between Midas and its authorized and approved franchisees, Midas grants franchises to qualified persons to license and operate Midas Shops using the Midas System.

15. Midas and its authorized franchisees have extensively advertised and promoted Midas Shops and the products and services they offer under the Proprietary Marks throughout the United States and through various media. As a result of such efforts and the enormous amount of money spent in connection therewith, the products and services offered by Midas and its franchisees under the Proprietary Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

**The Parties' Written Midas Franchise Agreements**

16. On or about May 29, 1993, Four Baers Corporation ("Four Baers") entered into a written Franchise and Trademark Agreement with Midas. Under this Franchise Agreement (the "Hawthorne Franchise Agreement"), Midas granted to Four Baers a franchise license to use the Midas System in connection with its operation of a Midas Shop at 14301 Crenshaw Boulevard, in Hawthorne, California (the "Hawthorne Shop"). A true and correct copy of the Hawthorne Franchise Agreement is attached hereto as Exhibit A.

17. The very next day, on or about May 30, 1993, Four Baers entered into another written Franchise and Trademark Agreement with Midas (the "Torrance Franchise Agreement") pursuant to which Midas granted to Four Baers a franchise license to use the Midas System in connection with its operation of a Midas Shop at 24005 Hawthorne Boulevard, in Torrance,

California (the "Torrance Shop"). A true and correct copy of the Torrance Franchise Agreement is attached hereto as Exhibit B.

18. Almost one year later, on or about April 28, 1994, Four Baers entered into a third written Franchise and Trademark Agreement with Midas (the "Hermosa Beach Franchise Agreement") pursuant to which Four Baers was granted a franchise license to use the Midas System in connection with its operation of a Midas Shop at 3125 Pacific Coast Highway, in Hermosa Beach, California (the "Hermosa Beach Shop"). A true and correct copy of the Torrance Franchise Agreement is attached hereto as Exhibit C.

19. By three separate Assignments of Midas Franchise and Trademark Agreements, each effective January 11, 1999, Midas consented to the assignment of each Franchise Agreement from Four Baers to Kimba. True and correct copies of the Assignments are attached hereto collectively as Exhibit D.

20. Under Paragraph 4.1(a) of the Franchise Agreements, Kimba agreed to pay Midas, within ten (10) days of the close of each calendar month, a royalty fee equal to ten percent (10%) of the net revenue it derived from the operation of each of its Midas Shops. Kimba also agreed to submit to Midas, along with its monthly royalty payments, a financial statement setting forth its net revenue for the preceding calendar month. (Franchise Agreements ¶4.2.)

21. Kimba acknowledged in the Franchise Agreements that Midas is the sole owner of all proprietary rights in and to the Midas System and each and every part thereof and all material and information revealed to Kimba under the Franchise Agreements relating to the Midas System. (Franchise Agreements ¶2.4.)

EAST\43552744.2                                            6

22. Kimba also agreed, that both during and after the term of each Franchise Agreement, it would not reveal any of Midas' trade secrets to any other person, firm or entity, and would not use any of Midas' trade secrets in connection with any business or venture in which it had a direct or indirect interest, other than in connection with the operation of the Midas Shops licensed by each Franchise Agreement. (Franchise Agreements ¶2.4.)

23. Each Franchise Agreement provides, in Paragraph 8.2, that it is an event of default, and grounds for termination of each Franchise Agreement, if Kimba fails to perform any obligation imposed by the Franchise Agreement and fails to fully cure such default within thirty (30) days after the receipt of written notice of the default. (Franchise Agreements ¶8.2(b).)

24. To that end, it is a material breach, and grounds for termination of each Franchise Agreement, if Kimba fails to make "any payment of money owed to Midas when due, or fail[] to submit to Midas when due any report required by Section 4.2 or 6.10" of the Franchise Agreements, and "such default is not totally cured within thirty days after Midas gives written notice of such default." (Franchise Agreements ¶8.2(a).)

25. Upon termination of each Franchise Agreement, Kimba is required, *inter alia,* to promptly pay to Midas all liquidated or ascertainable sums owing to Midas and immediately execute the forms necessary and take such other steps as may be necessary to transfer and assign to Midas the telephone numbers listed or advertised by Kimba at any time within the 24-month period prior to termination for its Midas Shops. (Franchise Agreements ¶8.7.)

26. Kimba is also required upon termination to (i) immediately discontinue the use of any of the Proprietary Marks, any other Midas indicia or the Midas System, or any other materials which may in any way indicate or tend to indicate that Kimba is or was an authorized Midas franchisee or is or was in any way associated with Midas; (ii) immediately remove all

signs containing any of the Proprietary Marks or other Midas indicia; (iii) promptly destroy or surrender to Midas all stationary, letterheads, forms, printed matter, promotional displays, and advertising containing any of the Proprietary Marks; and (iv) immediately discontinue all advertising placed as an authorized Midas franchisee or which contains or makes reference to any of the Proprietary Marks. (Franchise Agreements ¶8.7.)

27. In that regard, Kimba specifically acknowledged, under each Franchise Agreement, that Midas was the sole owner of the Proprietary Marks, Midas indicia and the Midas System, and that Kimba "shall use the Proprietary Marks only for so long as the right, franchise, and license granted herein remains in force, and only in connection with the sale and installation of genuine Midas products." (Franchise Agreements ¶¶2.1, 2.3.)

**Kimba's Breaches Of Its Obligations Under The Franchise Agreements**

28. Kimba repeatedly failed to comply with its obligations under the Franchise Agreements.

29. For example, Kimba failed to pay to Midas the royalties due and owing to Midas (i) under the Hawthorne Franchise Agreement for the months of March 2010 and April 2010, (ii) under the Torrance Franchise Agreement for the months of December 2009 through and including April 2010, and (iii) under the Hermosa Beach Franchise Agreement for the months of November 2009 through and including April 2010.

30. Kimba also failed to pay to Midas the past due balances in its trade accounts for all three of its franchised Midas Shops.

31. By Notices of Default dated June 8, 2010, Midas advised Kimba that it was in default of its obligations under the Franchise Agreements based on its failures to (i) pay the royalties due and owing to Midas under each Franchise Agreement, and (ii) pay the outstanding

balances on its trade accounts for all three of its Midas Shops. True and correct copies of the June 8, 2010 Notices of Default are annexed hereto collectively as Exhibit E.

32. Each of the June 8, 2010 Notices of Default advised Kimba that if its defaults were not cured no later than thirty (30) days following its receipt of the Notices of Default, the Franchise Agreements were subject to termination pursuant to Article 8 of the Franchise Agreements.

33. As of July 15, 2010, the defaults set forth in the Notices of Default had not been cured, and the cure period, as specified in the Notices of Default, had expired. Accordingly, by Notice of Termination dated July 15, 2010, Midas advised Kimba that the Franchise Agreements were terminated, effective immediately. A true and correct copy of the July 15, 2010 Notice of Termination is attached hereto as Exhibit F. The July 15, 2010 Notice of Termination advised Kimba that it was required to comply with the post-termination obligations under the Franchise Agreements.

### Kimba's Breaches Of Its Post-Termination Obligations And Infringement Of The Proprietary Marks

34. Notwithstanding the termination of the Franchise Agreements, Kimba continues to use the Proprietary Marks and the Midas System in connection with the operation of its former franchised Torrance Shop, to market and promote that Shop through the use of the Proprietary Marks, to hold that Shop out to the public as an authorized Midas Shop, and to pass-off its Shop and the unapproved products and services offered by its Shop as being authorized by Midas when they are not.

35. Kimba's use of the Proprietary Marks, Midas indicia, and the Midas System is without the license or consent of Midas and has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship.

36. In addition to the fact that both Midas and Kimba offer identical products at their shops, the products provided by Kimba using the Proprietary Marks are offered to the same class of consumers as those who patronize authorized Midas Shops. Upon seeing the familiar Proprietary Marks and other Midas indicia through Kimba's unauthorized use thereof, consumers will be deceived into concluding that Kimba's former franchised Torrance Shop, and the products and services offered and sold in connection therewith, are subject to Midas' supervision, are sponsored or endorsed by Midas and bear the Proprietary Marks pursuant to Midas' authority and permission.

37. So long as Kimba continues to use the Proprietary Marks in connection with the operation of its former franchised Torrance Shop, consumers have no practical way of knowing that Kimba's former franchised Torrance Shop is no longer affiliated with, or sponsored, authorized or endorsed by, Midas. As a result, any consumer dissatisfaction with Kimba's Shop, or with the products and services offered in connection therewith, will be attributed to Midas and the entire Midas network.

38. Kimba has received actual notice of its violation and infringement of the Proprietary Marks and has constructive notice of Midas' rights in the Proprietary Marks and the registrations thereof pursuant to 15 U.S.C. §1072. Kimba's continued infringement is willful, malicious, fraudulent and deliberate.

39. In addition to its failure to cease all use of the Proprietary Marks, the Midas System, and other Midas indicia, Kimba has also failed and refused to execute the forms

necessary to transfer and assign to Midas the telephone numbers listed or advertised by Kimba at any time within the 24-month period prior to the termination of the Franchise Agreements. To the contrary, Kimba continues to use the telephone numbers that it previously used at its Midas Shops (including, without limitation, (310) 375-2572 and (310) 378-2958) in connection with its automobile service businesses located at the very same location as one of its former franchised Midas Shops (at 24005 Hawthorne Boulevard in Torrance, California).

40. Midas has at all times complied with and fully performed all of its obligations under the Franchise Agreements.

41. Paragraph 10.4 of the Franchise Agreements provides that "[i]n the event Midas is required to employ legal counsel or to incur other expense to enforce any obligation of Franchisee hereunder, or to defend against any claim, demand, action, or proceeding by reason of Franchisee's failure to perform any obligation imposed upon Franchisee by this agreement, and provided that legal action is filed by or against Midas and such action or the settlement thereof establishes Franchisee's default hereunder, then Midas shall be entitled to recover from Franchisee the amount of all reasonable attorneys fees of such counsel and all other expenses incurred in enforcing such obligation or in defending against such claim, demand, action, or proceeding, whether incurred prior to or in preparation for or contemplation of the filing of such action or thereafter."

## COUNT I

## **LANHAM ACT – TRADEMARK INFRINGEMENT**

42. Midas repeats and realleges ¶¶ 1 through 41 of its Complaint as and for this ¶ 42, as if fully set forth herein.

43. Upon termination of each Franchise Agreement, Kimba was obligated to cease use of the Proprietary Marks, as well as all other elements of the Midas System and its associated trade names, service marks, and trademarks. In contravention of these obligations, and without Midas' consent or authorization, Kimba has used, and continues to use, certain of the Proprietary Marks, as well as other elements of the Midas System at its automobile service shop.

44. Kimba's acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Proprietary Marks, and Kimba's sale, offering for sale, distribution or advertising of goods and services under the Proprietary Marks, or any marks similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. §1114(l).

45. As a direct and proximate result of Kimba's infringement, Midas has been irreparably injured, including injury to its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

46. Midas has no adequate remedy at law because the Proprietary Marks are unique and represent to the public Midas' identity, reputation, and goodwill, such that damages alone cannot fully compensate Midas for Kimba's misconduct.

47. Unless enjoined by the Court, Kimba will continue to use and infringe the Proprietary Marks, to Midas' irreparable injury. This threat of future injury to Midas' business identity, goodwill, and reputation requires injunctive relief to prevent Kimba's continued use of the Proprietary Marks and to ameliorate and mitigate Midas' injuries.

## COUNT II

## LANHAM ACT – UNFAIR COMPETITION

48. Midas repeats and realleges ¶¶1 through 47 of its Complaint as and for this ¶ 48, as if fully set forth herein.

49. Kimba's acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. §1125(a).

50. As a direct and proximate result of Kimba's unfair competition, Midas has been irreparably injured, including injury to its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

51. Midas has no adequate remedy at law because the Proprietary Marks are unique and represent to the public Midas' identity, reputation, and goodwill, such that damages alone cannot fully compensate Midas for Kimba's misconduct.

52. Unless enjoined by the Court, Kimba will continue to compete unfairly with Midas, to Midas' irreparable injury. This threat of future injury to Midas' business identity, goodwill, and reputation requires injunctive relief to prevent Kimba's continued unfair competition and to ameliorate and mitigate Midas' injuries.

## COUNT III

## BREACH OF CONTRACT

53. Midas repeats and realleges ¶¶1 through 52 of its Complaint as and for this ¶ 53, as if fully set forth herein.

54. Kimba has failed and refused to perform its post-termination obligations under the Franchise Agreements, including, but not limited to, its obligations to (i) promptly pay all amounts due and owing to Midas, (ii) immediately and permanently discontinue the use of any of the Proprietary Marks, any of the Midas indicia, or the Midas System, or any other materials which may in any way indicate or tend to indicate that Kimba is or was an authorized Midas franchisee or is or was in any way associated with Midas, and (iii) immediately execute the forms necessary and take such other steps as may be necessary to transfer and assign to Midas the telephone numbers listed or advertised by Kimba at any time within the 24-month period prior to the termination of the Franchise Agreements.

55. To the contrary, and while it has no contractual right or license to do so, Kimba continues to use Midas' Proprietary Marks, Midas System, and other Midas indicia in connection with the operation of its automobile service shop and also continues to use the telephone numbers it used at its former franchised Midas Shops in connection with the operation of its automobile service shop.

56. As a direct and proximate result of Kimba's breaches of its post-termination obligations, Midas has been irreparably injured, including injury to its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

57. In addition to the irreparable injury which Midas is suffering as a result of Kimba's misconduct and contractual breaches, Midas has sustained monetary damages as a

direct and proximate result of Kimba's failure and refusal to comply with its contractual obligations. These damages include, without limitation, the amounts due and owing to Midas under the Franchise Agreements which Kimba has failed and refused to pay.

## PRAYER FOR RELIEF

**WHEREFORE,** Midas respectfully prays for the following relief against Kimba:

A. A preliminary and permanent injunction enjoining Kimba, its agents, servants and employees, and those people in active concert or participation with it, from, using the Midas System, Midas indicia, and the Proprietary Marks, or any trademark, service mark, logo or trade name that is confusingly similar to the Proprietary Marks;

B. A preliminary and permanent injunction ordering Kimba, its agents, servants and employees, and those people in active concert or participation with it, to:

1. immediately remove all Midas signs and Midas indicia from its former franchised Midas Shops;

2. immediately discontinue all advertising placed as an authorized Midas franchisee or which contains or makes reference to any of the Proprietary Marks;

3. immediately execute the forms necessary and take such other steps as may be necessary to transfer and assign to Midas the telephone numbers listed or advertised by Kimba for its Midas Shops at any time within the 24-month period prior to termination;

4. immediately surrender to Midas or destroy all stationery, letterheads, forms, printed matter, promotional displays and advertising containing any of the Proprietary Marks or Midas indicia; and

5. refrain from doing anything tending to indicate that Kimba is or was an authorized Midas franchisee, or is or was in any way associated with Midas.

C. That Kimba be required to file with the Court and to serve upon Midas' counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which it has complied with such injunction or order;

      D.      That Kimba account and pay over to Midas all gains, profits and advantages derived by it as a result of its infringement of the Proprietary Marks, breaches of contract and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117, and by the controlling principles of common law;

      E.      That Kimba pay to Midas such damages as it has sustained by reason of said trademark infringement, unfair competition and breaches of contract; and that, because of the willful nature of said infringement, the Court enter judgment for Midas for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

      F.      That Kimba pay to Midas such damages as Midas has sustained by reason of Kimba's breaches of the Franchise Agreements, including, without limitation, the royalty and trade account balances that are due and owing to Midas, in the amount of $50,753.72;

      G.      An award of the costs and expenses, including reasonable attorneys' fees, incurred by Midas in connection with this action as provided for by statute and the parties' Franchise Agreements; and

      H.      Such other and further relief as the Court deems just and proper.

**MIDAS INTERNATIONAL CORPORATION**

By:    s/ John A. Hughes
         One of its attorneys

Norman M. Leon (#6239480)
John A. Hughes (#6275159)
**DLA PIPER LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Phone:  (312) 368-4000
Facsimile:  (312) 236-7516